**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re | : | CIVIL ACTION |
| | : | |
| Reading Broadcasting, Inc., | : | |
| | : | |
| Debtor. | : | NO. 08-1775 |

## <u>MEMORANDUM AND ORDER</u>

**Baylson, J.**                                                    **August 8, 2008**

I.      **Nature of the Case**

_____Presently at issue is whether an appeal from the Bankruptcy Court for the Eastern District

of Pennsylvania ("Bankruptcy Court") should be dismissed as moot.  On January 17, 2008, the

Bankruptcy Court confirmed a liquidation plan for Reading Broadcasting, Inc. ("Debtor").

Appellant Philadelphia Television Network, Inc. ("PTN") is the Debtor's largest unsecured

creditor and appealed the January 17, 2008 order (the "Confirmation Order"), seeking for it to be

vacated.

        Appellee George L. Miller, the current Plan Administrator and former Chapter 11 Trustee

("Trustee"), and Appellee WRNN-TV Associates Limited Partnership ("WRNN"), the purchaser

of the Debtor's assets, moved to dismiss PTN's appeal as moot pursuant to the doctrines of

Constitutional and equitable mootness.[1]

        For the reasons discussed below, the Court will dismiss PTN's appeal as equitably moot.

---

[1] The Trustee and WRNN initially moved for dismissal only on the grounds of
Constitutional and equitable mootness, and not statutory mootness pursuant to 11 U.S.C. §
363(m).  Interestingly, PTN's Opposition Brief (Doc. No. 43) only addressed statutory mootness,
ignoring Constitutional and equitable mootness.  In response to that opposition, the Trustee and
WRNN argued that the appeal was in fact statutorily moot as well. <u>See</u> Joint Reply Brief (Doc.
No. 45).

II.     **Factual and Procedural Background**

A.     **Summary of the Proceedings in Bankruptcy Court**[2]

The Debtor filed a voluntary petition for Chapter 11 bankruptcy relief on October 7, 2005. The Debtor had operated an independent television station in Reading, Pennsylvania ("Station") and held a broadcasting license issued by the Federal Communications Commission ("FCC"). The license and station property were the most valuable assets of the bankruptcy estate ("Station Assets"). Upon motion of one of the Debtor's secured creditors, which was then joined by PTN, the Bankruptcy Court appointed George L. Miller as the Debtor's Trustee. Mr. Miller began operating the television station and engaging in efforts to sell the Station Assets.

Mr. Miller and PTN submitted competing liquidation plans to the Bankruptcy Court. On January 17, 2008, after a three-day evidentiary hearing, the Bankruptcy Court issued a memorandum and order ("Confirmation Order") which denied confirmation of PTN's plan, determining that it was not feasible under 11 U.S.C. § 1129(a)(11). The Confirmation Order also confirmed the Trustee's plan, finding that it was fair and equitable under 11 U.S.C. § 1129(b) and feasible under 11 U.S.C. § 1129(a)(11), that it met the best interests of the creditors under 11 U.S.C. § 1129(a)(7), and that WRNN was a good-faith purchaser paying fair value for the Debtor's Station Assets.[3]

---

[2] This summary is primarily derived from the Bankruptcy Court's Confirmation Order, dated January 17, 2008 (Bank. No. 05-26563, Doc. No. 801), and the briefs filed in this Court by the parties to this appeal.

[3] At the conclusion of the three-day hearing, all parties in interest that were in attendance expressed a preference for the Trustee's proposed plan, except for PTN which supported its own plan. One creditor not at the hearing also supported PTN's plan. See Confirmation Order, Bank. No. 05-26563, Doc. No. 801.

Under the Bankruptcy Court's Confirmation Order, the deadline for the effective date of the Trustee's plan, and thus for the sale of the Station Assets was May 16, 2008. Therefore, the Trustee had to sell the Station Assets to WRNN by that date, or obtain an extension of the deadline for cause.

Furthermore, the Confirmation Order provided that the sale of the Station Assets (and thus the Trustee's plan as a whole) was contingent upon approval by the FCC of the transfer of the Debtor's broadcasting license to WRNN and upon the modification of a lease that the Debtor had with SOT, Inc., regarding tower use for broadcasting signals. To resolve the former contingency, the Trustee, in cooperation with WRNN, filed an application with the FCC to transfer the Debtor's FCC license to WRNN. PTN filed an objection, but the FCC eventually consented to the transfer of the FCC license. The latter contingency, involving SOT, Inc., proved more difficult to resolve and eventually delayed the sale of the Station Assets until July 12, 2008, as discussed below.

Shortly after the Bankruptcy Court entered the Confirmation Order, PTN moved for its reconsideration; however, the Bankruptcy Court denied its motion. PTN also filed a motion to dismiss the Debtor's bankruptcy case but later withdrew its motion. PTN did not move to stay the Confirmation Order until March 21, 2008, more than two months after the Bankruptcy Court had entered the order, and on April 3, 2008, the Bankruptcy Court denied PTN's motion.

**B.      Summary of Proceedings in the District Court**

PTN filed its appeal in this Court on April 30, 2008 (Doc. No. 4), and the Appellees responded on May 15, 2008 (Doc. No. 8). Also on May 15, 2008, PTN filed an Expedited Motion for a stay of the Bankruptcy Court's Confirmation Order, pending resolution of the

appeal (Doc. No. 7).  By order dated May 20, 2008 (Doc. No. 10), this Court required any party opposing the stay to file a brief by May 27, 2008; scheduled oral argument for June 2, 2008; and instructed the parties to promptly inform the Court should they have reason to believe the deadline for the sale of the Debtor's station would be postponed.

In response to the Court's May 20, 2008 order, Counsel for the Trustee informed the Court that the Trustee intended to move, in the bankruptcy proceedings, for an extension of the deadline for the sale of the Debtor's assets.  Counsel for the Trustee also informed the Court that the Trustee would seek the Bankruptcy Court's expedited review of the motion for an extension. As a result, the Court cancelled the June 2, 2008 oral argument, pending the resolution of the motion for an extension in the bankruptcy court.

### C.     Sale of Debtor's Station Assets

The Trustee could not close on the sale of the Station Assets because issues regarding the modification and transfer of the SOT tower license remained pending.  By Order dated June 2, 2008, the Bankruptcy Court scheduled a hearing for June 12, 2008 on these remaining issues. See Scheduling Order, Bank. No. 05-26563, Doc. No. 1147.  On June 12, 2008, the Bankruptcy Court held the hearing, as scheduled, and resolved the SOT matter at the hearing.

PTN did not request this Court to take any action or reschedule argument on its Motion to Stay prior to the June 12, 2008 hearing, even though it received the June 2, 2008 notice of the hearing.  Immediately following the June 12, 2008 hearing, WRNN and the Trustee closed on the sale of the Station Assets pursuant to the Confirmation Order, and by the end the day, the sale was consummated.

As noted above, on June 20, 2008, the Trustee and WRNN moved to dismiss PTN's

-4-

appeal as equitably and Constitutionally moot.  PTN opposed the motion.  The Trustee and

WRNN filed a Joint Reply Brief on July 14, 2008.  PTN has also filed a Sur-Reply Brief, which

the Court takes into consideration, despite PTN's failure to obtain leave to file a sur-reply,

because it addresses equitable mootness, which PTN originally ignored in its opposition to the

Motion to Dismiss.

### D.    PTN's Allegations of Wrongdoing[4]

PTN alleges that when counsel for the Trustee informed the Court of its intention to move

for an extension of the deadline for the sale, the Trustee misrepresented its true motivation,

which was to surreptitiously close on the sale before a stay of the Confirmation Order could be in

effect.  According to PTN, the Trustee did not really need to extend the deadline for the sale, but

only did so in order to cancel the June 2, 2008 hearing.  PTN further alleges that the Trustee

inaccurately conveyed to the Bankruptcy Judge that once the SOT license issues were resolved,

20 days were needed to close on the sale.

PTN has described the alleged wrongdoing in its opposition brief, in its appeal, and in a

Motion in this Court for "Leave to Take Discovery Into Apparent Rule 11 Violation for Purposes

of Determining Whether Sanctions Should be Imposed, and if so, the Scope and Nature of Such

Sanctions" (Doc. No. 32).  The Court does not make any ruling on these issues.

### III.   General Standard of Review

In an appeal from a bankruptcy court decision, the district court sits as an appellate court.

11 U.S.C. § 158(a)(1).  This Court reviews a bankruptcy court's legal determinations *de novo* and

---

[4] The allegations described herein are a summary of the allegations PTN made in District
Court proceedings.

factual findings for clear error.  See Bankr. R. 7052 ("Rule 52 F. R. Civ. P. applies in adversary

proceedings."), 8013; In re DiLoreto, No. 04-1326, 2006 WL 2974156, at *1 (E.D. Pa. Oct. 13,

2006) (citing In re Morrissey, 717 F.2d 100, 104 (3d Cir. 1983)).  A trial court's findings of fact

are clearly erroneous when, after reviewing the record, the appellate court "is left with the

definite and firm conviction that a mistake has been committed."  Anderson v. Bessemer City,

105 S. Ct. 1504, 1511 (1985) (quoting United States v. U.S. Gypsum Co., 68 S. Ct. 525, 542

(1948)).  Under this standard, "[i]t is the responsibility of an appellate court to accept the

ultimate factual determinations of the fact-finder unless that determination is either (1)

completely devoid of minimum evidentiary support displaying some hue of credibility or (2)

bears no rational relationship to the supportive evidentiary data."  DiFederico v. Rolm Co., 201

F.3d 200, 208 (3d Cir. 2000) (citations omitted).  Further, in this Court's review of the

bankruptcy court's factual findings, credibility determinations will be given "due regard."  Bankr.

R. 7052, 8013; see DiFederico, 201 F.3d at 208 (noting "findings involved credibility

determinations which are supported by the record and which we will not second-guess").

## IV.    Equitable Mootness

"Under [the] widely recognized and accepted doctrine [of equitable mootness], the courts

have held that '[a]n appeal should . . . be dismissed as moot when, even though effective relief

could conceivably be fashioned, implementation of that relief would be inequitable.'"  In re

Contintental Airlines, 91 F.3d 553, 558-59 (3d Cir. 1996) (quoting Official Comm. of Unsecured

Creditors of LTV Aerospace & Defense Co. v. Official Comm. of Unsecured  Creditors of LTV

Steel Co., 988 F.2d 322, 325 (2d Cir. 1993)).  See also Nordhoff Investments, Inc. v. Zenith

Electronics Corp., 258 F.3d 180, 185-186 (3d Cir. 2001) (affirming the district court's finding

that a bankruptcy appeal was equitably moot because the reversal of some parts of the liquidation

plan would be difficult and inequitable, and because the reversal of other parts of the liquidation

plan might prove impossible).[5]  The doctrine is "limited in scope and [should be] cautiously

applied," Continental, 91 F.3d at 559, and involves "a discretionary balancing of equitable and

prudential factors," id. at 560.

The Third Circuit has set forth five factors to be considered in conducting an equitable

mootness analysis:  1) whether the reorganization plan has been substantially consummated; 2)

whether a stay has been obtained; 3) whether the relief requested would affect the rights of the

parties not before the court; 4) whether the relief requested would affect the success of the plan;

and 5) the public policy of affording finality to bankruptcy judgments.  Nordhoff, 258 F.3d at

185; Continental, 91 F.3d at 560.  The Court will address each factor in turn.

A.     Substantial Consummation

The first factor is paramount:  "the foremost consideration has been whether the

reorganization plan has been substantially consummated."  Continental, 91 F.3d at 560.  It is

---

[5] The doctrine of equitable mootness developed under bankruptcy law and is distinct from, and broader than, Constitutional mootness.  An appeal is Constitutionally moot only if "events have taken place during the pendency of the appeal that make it 'impossible for the court to grant any effectual relief whatever.'"  In re Contintental Airlines, 91 F.3d 553, 558 (3d Cir. 1996) (quoting Church of Scientology v. United States, 509 U.S. 9, 12 (1992)).  If there is "some form of meaningful relief," regardless of what it is, the appeal is not Constitutionally moot.  In re Swedeland Dev. Group, Inc., 16 F.3d 552, 560 (3d Cir. 1994).  An appeal is not Constitutionally moot "merely because a court cannot restore the parties to the *status quo ante*."  Id.  In the instant case, the Court could conceivably order several forms of relief, such as ordering that the Station Assets be transferred back to the Trustee, and therefore, the appeal is not Constitutionally moot.

clear that in the instant case, the Trustee's plan has been substantially consummated.[6]  The Trustee and WRNN have submitted affidavits indicating that the Trustee has transferred substantially all of the property proposed by the plan to be transferred.  The affidavits also indicate that WRNN has assumed and is conducting the business and management of the Station Assets, and that distribution has begun.

PTN does not dispute that the plan has been substantially consummated but appears to argue that if a plan is substantially consummated after a party has filed an appeal, the equitable mootness analysis parallels the statutory mootness analysis.  PTN cites no law to support its contention, however, and the Court finds that the two analyses are distinct.  The first, and most important, of the five factors clearly weighs in favor of dismissing the appeal.

**B.      The Failure to Obtain a Stay**

After the Bankruptcy Court denied PTN's request for a stay on April 3, 2008 (Order, Bank. No. 05-26563, Doc. No. 998), PTN was obligated to obtain a stay in this Court as a priority, yet it failed to do so.[7]  It "is obligatory upon appellant . . . to pursue with diligence all available remedies to obtain a stay of execution of the objectionable order (even to the extent of applying to the Circuit Justice for relief . . .) if the failure to do so creates a situation rendering it

---

[6] According to the Bankruptcy Code, "'substantial consummation' means:  A) transfer of all or substantially all of the property proposed by the plan to be transferred; B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and C) commencement of distribution under the plan."  11 U.S.C. § 1101(2).

[7] Of note, in denying PTN's motion for a stay, the Bankruptcy Court specifically mentioned the possibility that PTN's appeal could become equitably moot.  Order, Bank. No. 05-26563, Doc. No. 998, p. 5 ("assuming there is some possibility that PTN's appeal will become equitably moot . . .").

inequitable to reverse the orders appealed from." In re Highway Truck Drivers & Helpers Local Union # 107, 888 F.2d 293, 297 (3d Cir. 1989).

PTN did not "pursue with diligence all available remedies to obtain a stay of execution of the objectionable order," id., despite its obligation to do so.  The Bankruptcy Court entered the Confirmation Order on January 17, 2008, and PTN did not move (in the Bankruptcy Court) for a stay of the order until March 21, 2008, more than two months later.[8]  In this Court, although PTN filed its appeal on April 30, 2008, it did not move for a stay of the Confirmation Order until May 15, 2008, one day before the original May 16, 2008 deadline for the Order's effective date.  PTN was generally dilatory in seeking a stay, and when this Court cancelled the hearing on the matter, PTN did not itself request a new date, even though it knew the Bankruptcy Court was holding a hearing on June 12, 2008 and therefore could have issued a final ruling allowing the sale on that same date.  Under all the circumstances, the Court can not find that PTN took all necessary steps to obtain a stay.[9]  Furthermore, and perhaps most importantly, the fact remains that a stay has never been in place.  "[M]any courts have based their prudential decisions to decline to consider challenges to bankruptcy court orders on the ground that there has been substantial

_____

[8] As noted above, the Bankruptcy Court denied PTN's motion on April 3, 2008.  See Order, Bank. No. 05-26563, Doc. No. 998

[9] It is also important to point out that had this Court ruled on PTN's Motion for a Stay, it may have denied it.  As previously noted, the Bankruptcy Court denied PTN's request for a stay, and this Court, sitting as an appellate court, reviews that decision for an abuse of discretion.  In re Wymer, 5 B.R. 802 (9th Cir. BAP 1980).  "Discretion will be found to have been abused when the judicial action is arbitrary, fanciful or unreasonable which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court."  In re Blackwell, 162 B.R. 117, 119 (E.D. Pa.1993).  This is as difficult burden, yet PTN assumes it was entitled to a stay.  Of course if this Court had denied a stay, or refused to timely consider the issue, PTN had a further recourse in the Third Circuit.

consummation of a plan of reorganization in reliance upon an unstayed confirmation order."

Continental, 91 F.3d at 561.  See also, Adkins v. Elggren, 42 Fed. Appx. 252, 253 (10th Cir.

2002) (unpublished) (affirming district court's finding that an appeal from a bankruptcy court

order was moot because a stay was not in place, even though a motion for a stay was pending).

### C.    Reliance on Confirmation by Parties not Before the Court

Under the third factor, a court considers whether the relief requested would affect the

rights of the parties not before the court.  See Continental, 91 F.3d at 562 ("High on the list of

prudential considerations taken into account by courts considering whether to allow an appeal

following a consummated reorganization is the reliance by third parties, in particular investors,

on the finality of the transaction.")  This factor appears to be the weakest for the Trustee and

WRNN; however, reliance by third parties not before the Court is not a dispositive factor.  See In

re SGPA, Inc., 34 Fed. Appx. 49, 53 (3d Cir. 2002) (finding an appeal to be equitably moot even

though there was little reliance by third parties not before the Court).  Furthermore, some third

parties have indeed relied on the Confirmation Order:  1) creditors who have received

distributions under the Trustee's Plan; 2) Goldman Sachs, since it extended the financing to

WRNN; and 3) the FCC.  Thus, although the facts of this case do not present the same extent of

third-party reliance as in Continental, for example, some reliance is present and taken into

consideration.  See Nordhoff, 258 F.3d at 189.

### D.    Whether the Relief Requested Would Affect the Success of the Plan

Under the fourth factor, the Court assesses whether the relief requested would affect the

success of the plan by undoing every authorization for every transaction so as to create an

"unmanageable, uncontrollable situation for the Bankruptcy Court."  Nordhoff, 258 F.3d at 189.

-10-

In its appeal, PTN requests that the Bankruptcy Court's confirmation of the Trustee's liquidation plan be set aside in its entirety.  In <u>Nordhoff</u>, the Third Circuit found that the fourth factor weighed against appellants because they sought to dissolve the plan completely, as opposed to a less extreme measure, such as undoing one component of the plan.  <u>Id.</u> at 189-190.  Similarly to the appellants in <u>Nordhoff</u>, PTN seeks to dissolve the confirmed reorganization plan completely, and the fourth factor therefore weighs in favor of dismissal.[10]

### E.   General Public Policy Affording Finality

The fifth factor requires the Court to examine the general public policy affording finality to bankruptcy judgments.  "[W]e should ask whether we want to encourage or discourage reliance of investors and others on the finality of bankruptcy confirmation orders.  The strong public policy in favor of maximizing debtors' estates and facilitating successful reorganization, reflected in the code itself, clearly weighs in favor of encouraging such reliance." <u>Continental</u>, 91 F.3d at 565.  The fifth factor can be described as the "lens through which the other equitable mootness factors should be viewed" since it represents the overarching rationale for the equitable mootness doctrine.  <u>Nordhoff</u>, 258 F.3d at 190.  <u>See</u> <u>also</u> <u>Continental</u>, 91 F.3d at 565 (explaining that "the importance of allowing approved reorganizations to go forward in reliance on bankruptcy court confirmation orders may be the central animating force behind the equitable mootness doctrine").

In the instant case, the Bankruptcy Court diligently evaluated two competing reorganization plans, holding a three-day evidentiary hearing and issuing a comprehensive

---

[10] It is also important to note that this Court and/or the Bankruptcy Court may not have the authority to reverse the FCC's approval of the license transfer, and such reversal would be a necessary step in setting aside the Trustee's plan.

memorandum and order.  After what appears to be quite careful consideration, the Bankruptcy Court denied PTN's reorganization plan, and confirmed the Trustee's reorganization plan.  In reliance on the Bankruptcy Court's unstayed Confirmation Order, the Trustee sold the Station Assets, pursuant to confirmed plan, and distributions have begun.  The strong public policy of promoting the finality of bankruptcy judgments indeed applies, and this is precisely the kind of situation contemplated by the equitable mootness doctrine.  Public policy concerns thus weigh in favor of dismissing PTN's appeal.

**V.      Conclusion**

After an analysis of the five-factor test set forth by the Third Circuit for evaluating equitable mootness, and after consideration of PTN's allegations of wrongdoing, the Court concludes that PTN's appeal should be dismissed as equitably moot.[11]

---

[11] Although the Court bases its conclusion on equitable mootness, PTN's appeal would likely be statutorily moot as well.  Statutory mootness involves a particular section of the Bankruptcy Code, 11 U.S.C. § 363(m), which provides that a sale can not be reversed on appeal if it was not stayed pending appeal and if the purchaser is a good faith purchaser.  PTN argues that WRNN was not a good faith purchaser and the appeal therefore is not statutorily moot, and relies on case law where the bankruptcy court did not find the purchaser was a good faith purchaser.  See, e.g., In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3d Cir. 1986) (reversing district court's finding that a bankruptcy appeal was moot pursuant to § 363(m) and remanding to bankruptcy court for determination of whether purchaser was a good faith purchaser).  PTN's argument fails in the instant case because in the Confirmation Order, the Bankruptcy Court specifically found that WRNN was a good faith purchaser.  See Order, Bank. No. 05-26563, Doc. No. 801, ¶ 2 ("This purchaser [WRNN] is buying in good faith and for fair value.")  Furthermore, PTN did not question WRNN's status as a good-faith purchaser in the Bankruptcy Court, and as a result, this Court should not consider PTN's new argument.  See In re Kaiser Group International, Inc., 399 F.3d 558, 565 (3d Cir. 2005) (explaining the general rule that if a party fails to raise an issue in bankruptcy court, the issue is waived and may not be considered by the district court on appeal); In re Ginther Trusts, 238 F.3d 686, 689 (5th Cir. 2001) ("Appellants contend, for the first time on appeal to the district court, that Redstone was not a good faith purchaser of the Ranch, making § 363(m) inapplicable.  As Redstone's status as a good faith purchaser was not challenged in the bankruptcy court, however, we need not address this issue.").

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re | : | CIVIL ACTION |
| | : | |
| Reading Broadcasting, Inc., | : | |
| | : | |
| Debtor. | : | NO. 08-1775 |

## ORDER

AND NOW, this      day of August, 2008, for the reasons discussed in the foregoing

memorandum, it is hereby ORDERED that the Trustee's and WRNN's Joint Motion to Dismiss

the Appeal as Moot (Doc. No. 29) is GRANTED.  PTN's Motion for "Leave to Take Discovery

Into Apparent Rule 11 Violation for Purposes of Determining Whether Sanctions Should be

Imposed, and if so, the Scope and Nature of Such Sanctions" (Doc. No. 32) is DENIED as

MOOT.  The Clerk shall close the case.


BY THE COURT:


  /s/  Michael M. Baylson

Michael M. Baylson, U.S.D.J.


A:\08-1775 Memo and Order re Mot to Dismiss Appeal as Moot.wpd